BRANNAN v. MESICK et al.

The first step in the construction of a deed, is to ascertain the understanding and inten-
tion of the parties at the time of contracting.
To arrive at this intention, the situation of the parties, and the subject-matter at the
time of contracting, should be considered; the whole deed should be taken together,
and, if possible, effect should be given to all its parts, although the immediate object
of inquiry be the meaning of an isolated clause.
Oral evidence is sometimes admissible to explain, but not to contradict or vary the terms
of a written contract; thus, if the words of a contract be ambiguous, its meaning may
be gathered from contemporaneous facts which intrinsic testimony establishes.
If, when the intention is thus ascertained, it is found that the words will fairly bear a
construction which makes them express this intention, then the words will be so con-
strued, and the contract, with this interpretation, enforced as the contract of the par-
ties.
The distinction between *patent* and *latent* ambiguities, is now regarded as intended to
enable the Court to distinguish between cases *curable* and those of *incurable* uncer-
tainty.
A executed to B, C, D, and E, an instrument which commences in the ordinary form of
a deed of bargain and sale, purporting to convey to them, in consideration of $125,000,
the property therein described, with a general warranty of title against the claims of
all persons; this clause then followed by a power of attorney authorizing the grantees
to take possession, sell, and convey, or lease the property, in the name of the grantor,
and to receive the purchase-money and rents, and that grantor would not sell, lease,
or authorize any other person to sell or lease the premises, or revoke the power given,
unless the grantors neglected to pay the said sum of $125,000; in instalments, speci-
fied therein, with a covenant that if said amount was paid at the time specified, the
instrument should take effect as a full and complete conveyance in fee of the property;
and also a covenant, that if grantor should fail to fulfill his covenants, the instru-
ment should take effect as a conveyance : *Held,* that such instrument was intended as
a conveyance upon *condition precedent,* and that grantees could acquire no title under
it until the condition was performed, and when so performed, the title vests in the
grantees without any further act on the part of the grantor.
Such condition precedent must be strictly and punctually performed before the estate
can vest or be enlarged.
The registration of such instrument is sufficient to put a subsequent purchaser on in-
quiry as to the performance of the conditions.
Until the payments are made, the title is in the grantor, and would pass to a subsequent
purchaser after the time fixed for the payments.

APPEAL from the District Court of the Sixth Judicial District,
County of Sacramento.

This is a proceeding in equity to remove a cloud from plain-
tiff's title to cetain lots in Sacramento city.
Plaintiff deraigns title from John A. Sutter, Jr., through a
conveyance executed on the 20th of June, 1850, in favor of the
plaintiff, S. C. Bruce, Julius Wetzlar, and James S. Graham,
which is as follows :

*John A. Sutter, Jr., to Samuel Brannan, Samuel C. Bruce, Julius
Wetzlar, and James S. Graham.*—This indenture, made the twen-
tieth day of June, in the year one thousand eight hundred and
fifty, between John A. Sutter, Jr., of the city of Sacramento and
State of California, of the first part, and Samuel Brannan, of the

city of San Francisco, one-fourth interest—Samuel C. Bruce, of the city of Sacramento, one fourth interest—Julius Wetzlar, of the city of Sacramento, one-fourth interest—James S. Graham, of the city of San Francisco, one-fourth interest—parties of the second part, witnesseth that the said party of the first part, for and in consideration of the sum of one hundred and twenty-five thousand dollars, ($125,000,) in hand paid by the said parties of the second part, (the receipt whereof is hereby acknowledged,) has granted, bargained, and sold, and by these presents does grant, bargain, and sell, unto the said parties of the second part, and their heirs and assigns forever, all the estate, right, title, interest, claim, or demand whatsoever, of him, the said party of the first part, either in law or equity, of, in, and to, the following described property, situate, lying, and being in the city of Sacramento and State of California, consisting of two thousand two hundred (2200) town-lots, be the same more or less; said lots being bounded according to the original plat or plan of said city and including a lot in said city bounded and described as follows, to wit: Lot number two, (2,) in the square between J and K and Third and Fourth streets, commencing at a point on the northeasterly corner of said lot, running thence southerly on a line parallel with Third street one hundred and sixty feet to an alley, thence westerly along said alley twenty-five feet and eight inches, thence northerly on a line parallel with said Third street one hundred and sixty feet to said J street, thence easterly along said J street twenty-five feet and eight inches, to the place of beginning.

Also, five (5) shares, except the lots sold up to date, in the town of Eliza, said town being situate on the east bank of Feather River, in the county of Yuba, and State of California.

Also, one (1) share in Plumas City, said city being situate in the county of Yuba, and State of California—said share being the eightieth part of said city, and consisting of thirty-six town-lots, numbered as follows: Lot number eight, (8,) in block number six (6;) lot number two, (2,) in block number three hundred and fourteen (314;) lot number three, (3,) in block number three hundred and three (303;) lot number eleven, (11,) in block number eight (8;) lot number two, (2,) in block number twenty-nine (29;) lot number three, (3,) in block number twenty-one (21;) lot number two, (2,) in block number one (1;) lot number five, (5,) in block number forty-six (46;) lots number one, (1,) two, (2,) three, (2,) and four, (4,) in block number forty-nine (49;) lots number five, (5,) six, (6,) seven, (7,) and eight, (8,) in block number one hundred and thirty-four (134;) lots number one, (1,) two, (2,) three, (3,) four, (4,) five, (5,) six, (6,) seven, (7,) and eight, (8,) in block two hundred and twenty-one (221;) lots number one, (1,) two, (2,) and three, (3,) in block two hundred and

three (203;) and lot number five, (5,) in block one hundred and twenty-nine (129.)

Also, a portion of the fifty-vara lot number sixty-two, (62,) on the official map of the city of San Francisco, and having a front of thirty six feet on Pacific street, by one hundred feet deep, running back towards Broadway street; said piece of land being on the southwest corner of said lot sixty two, (62,) and situate one hundred and one-half feet from Dupont street.

Also, twelve lots in the town of Nicolaus, being each one hundred feet in length and eighty feet in width, and numbered as follows : Lot number six, (6,) in block number eight (8;) lot number ten, (10,) in block number sixteen (16;) lots number three, (3,) and four, (4,) in block number eighteen (18;) lot number six, (6,) in block number forty-four (44;) lot number two, (2,) in block number forty-five (45;) lot number five, (5,) in block number forty-six (46;) lot number one, (1,) in block number forty-three (43;) and lots number one, (1,) five, (5,) six, (6,) and ten, (10,) in block number fifty-two (52.)

And, also, that certain tract of land situate on the Sacramento River, commencing at a point on the east bank of said river, adjoining the land owned by George McKinstry, running thence up the said river-bank along the low-water-line, one-half mile; thence in a direct line back from said river one mile; thence in a line parallel to the aforesaid river-line southerly one-half mile, and thence to the place of beginning.   Being that certain tract of land situate, lying, and being, between the southerly boundary of Sacramento city, and the town called Sutter, or Sutterville. Together with all and singular the tenements, hereditaments, privileges, and appurtenances thereunto belonging, or in anywise appertaining; to have and to hold the above-granted premises unto the said parties of the second part, and to their heirs and assigns, to their use, benefit, and behoof, forever.

And the said party of the first part, for himself, his heirs, executors, and administrators, doth hereby covenant to and with the said parties of the second part, their heirs and assigns, that the title to the property of the party of the first part, above conveyed, or attempted to be conveyed, by the said party of the first part, to the said parties of the second part, their heirs and assigns, he will forever warrant and defend against the claim or claims of all persons whatsoever.   And the said party of the first part doth further covenant to and with the said parties of the second part, their heirs and assigns, that he, the said party of the first part, shall and will make, constitute and appoint, and by these presents doth make, constitute and appoint, the said parties of the second part his true and lawful attorneys, for him and in his name, place, and stead, to enter into and take possession of all such lands, tenements, hereditaments, and real estate whatsoever and wheresoever, in the State of California, to or in

7

which the said party of the first part is, or may be in any way, entitled or interested; and to grant, bargain, sell and convey the same, or any parcel thereof, for such sum or price, and on such terms, as to them shall seem meet, and for him, the said party of the first part, and in his name, to make, execute, acknowledge, and deliver, good and sufficient deeds and conveyances for the same. And, until the sale or sales thereof, to let and demise the said real estate, and to ask, demand, restrain for, collect, recover, and receive all sums of money which now are or may become due and owing to the said party of the first part, his heirs, executors, administrators, and assigns, by means of such bargain and sale, or lease and demise, giving and granting unto the said parties of the second part, their heirs and assigns, full power and authority to do and perform all and every act and thing whatsoever, requisite and necessary to be done in and about the premises, as, to all intents and purposes, the party of the first part might or could do, if personally present. And the said party of the first part, for himself, his heirs, executors, administrators, and assigns, doth further covenant to and with the said parties of the second part, their heirs and assigns, that he, the said party of the first part, his heirs, executors, administrators or assigns, shall not use, will, sell, or in any way dispose, or authorize any other person or persons to sell, or in any other way dispose of any lands, tenements, hereditaments, and real estate whatsoever, to which he, the said party of the first part is, or may be in any way entitled or interested, or to receive from any person or persons, any sum or sums of money which are due and owing to the said party of the first part for the sale of any real estate, or in any way impair or revoke the power hereby given to the said parties of the second part, their heirs and assigns, by the said party of the first part, unless the said parties of the second part, their heirs or assigns, neglect or refuse to pay to the said party of the first part, his heirs, executors, administrators, or assigns, the just and full sum of twenty-five thousand dollars, ($25,000,) on or before the first day of July, in the year one thousand eight hundred and fifty ; and the further sum of twenty-five thousand dollars, ($25,000,) on or before the twenty-ninth day of September, in the year one thousand eight hundred and fifty; and the further sum of seventy-five thousand dollars, ($75,000,) on or before the first day of July, in the year one thousand eight hundred and fifty-one ; making, in all, the just and full sum of one hundred and twenty-five thousand dollars ($125,000.)

And the said party of the first part, his heirs, executors, administrators, and assigns, doth further covenant, to and with the said parties of the second part, their heirs and assigns, that in case the said parties of the second part, their heirs and assigns, pay to the said party of the first part, his heirs, executors, ad-

ministrators, or assigns, the just and full sum of twenty-five thousand dollars, ($25,000,) on or before the first day of July, in the year one thousand eight hundred and fifty; and the further sum of twenty-five thousand dollars, ($25,000,) on or before the twenty-ninth day of September, in the year one thousand eight hundred and fifty; and the further sum of seventy-five thousand dollars, ($75,000,) on or before the first day of July, in the year one thousand eight hundred and fifty-one; making, in all, the just and full sum of one hundred and twenty-five ($125,000;) then this instrument is to take effect as a full and complete conveyance, in fee, of all and singular the lands, tenements, hereditaments, appurtenances, and real estate in the State of California, belonging to or in which the said party of the first part, his heirs, executors, administrators, or assigns, is, or are, in any way entitled or interested.    And the said party of the first part, for himself, his heirs, executors, administrators, and assigns, doth further covenant to and with the said parties of the second part, their heirs and assigns, that in case the said party of the first part, his heirs, executors, administrators, or assigns, in any way neglect or refuse to fulfill the above covenants, made by the said party of the first part, for himself, his heirs, executors, administrators, or assigns, then this instrument is to take effect immediately thereupon, as a full and complete conveyance, in fee, of all and singular the lands, tenements, hereditaments, appurtenances, and real estate, whatsoever and wheresoever, in the State of California, belonging to or in which the said party of the first part, his heirs, executors, administrators, or assigns, is, or are, in any way entitled or interested.

In witness whereof, the said party of the first part hath hereunto set his hand and seal the day and year first above written.

JOHN A. SUTTER, JR.

Sealed and delivered in presence of R. H. Stanley and S. B. Marchall.

*State of California, City and County of Sacramento: ss.*—On this twentieth day of June, in the year one thousand eight hundred and fifty, personally appeared before me, a notary public, in and for the said county, John A. Sutter, Jr., known to me to be the person described in and who executed the foregoing instrument, who acknowledged to me that he executed the same freely, and voluntarily, and for the purpose therein mentioned.

S. B. MARCHALL, Notary Public.

Filed for record June 20, 1850, at 8 o'clock, P. M., and duly recorded in book D of Deeds, pages 191, 192, 193, 194, and 195.

LEWIS T. BIRDSALL,

Recorder of Sacramento County, Cal.

By F. J. ABY, Deputy.

This deed was recorded on the day of its execution, and the grantees went into possession of the land, portions of which they sold and conveyed in the name of and as the attorneys of the grantor.

Twenty-five thousand dollars of the money mentioned in the deed was paid at or soon after the execution; and on the 18th day of March, 1851, Sutter, the grantor, signed receipts acknowledging the full payment of the remaining sums, which receipts were acknowledged before a notary, and on the 19th of March, recorded in Sacramento county, and on the 27th of June, 1851, the interest of Bruce, Graham, and Wetzlar in the lots described in the complaint, was conveyed to plaintiff.

In July, 1855, Sutter, then a resident of Acapulco, in the Republic of Mexico, conveyed the property to defendant Mesick, who has placed his conveyance on record, and claims to be the owner of the lands in question.

Plaintiff avers that the sums of money mentioned in the deed of June, 1850, have been fully paid, and that defendant Mesick, with notice of the fact, fraudulently procured the execution of the deed in July, 1855, which deed is a cloud upon plaintiff's title, and prevents the free enjoyment and disposition of his property. He therefore prays that it may be canceled, or that Mesick may be compelled to execute a conveyance in favor of plaintiff.

The Court below entered a decree, declaring the deed from Sutter to Mesick fraudulent and void as to plaintiff, and perpetually enjoining defendants from asserting title, under such deed, to the property in controversy, and the defendant appealed.

*P. L. Edwards* for Appellant.

[After having argued the case at length, and cited authorities to show that the deed is void for want of certainty in the description of the premises, and for want of mutuality of consideration, proceeded to argue the points decided by the Court as follows:]

In Mesick *v.* Sunderland, it is held that the instrument from which the respondent deraigns title is inoperative as a conveyance *in presenti*, for the want of certainty in the description of the property intended to be affected. It is there said : " We are satisfied, from a full examination of the instrument, that it was designed as an executory agreement for the sale of the property therein described, or a conveyance on condition precedent, dependent for its validity on the performance of an act *in pais.*" That was an ejectment in which it was only necessary to decide whether it could be operative as a conveyance—whether it was operative as an executory agreement was not determined. It may have been intended as an executory agreement, or as a conveyance on condition precedent, and yet inoperative as either, for want of conformity with the requirements of law.

It is difficult to imagine why greater certainty should be required in the one character of instrument than in either of the others. The contract, whether executed or executory, is wholly in writing, and its effect is a question of law, whether it was intended as a conveyance, either *in presenti* or upon conditions precedent, or as an agreement to convey, must be ascertained from its own terms. Young *v.* Jeffries & Harris, 3 Dev. & Bat. N. C., 216.

In a written contract as to lands, the terms are fixed, and their meaning is a question of law; it must be certain, or refer to another which makes it certain, and parol evidence is not admissible to supply a substantial defect. Massey *v.* Belisle, 2 Iredell, 170; Taney *v.* Batchell, 9 Gill's R., 206; Church of the Advent, *v.* Farrow, 7 Rid. Eq., 378.

Is greater certainty of description required in a conveyance *in presenti,* than in conveyance on condition precedent? A labored and patient research among the authorities has failed to produce a single case favoring the affirmative, while the general principles of the cases, as well as right reason, are with the negative. The latter is, of necessity, already in one view uncertain, for it depends for its effect upon the performance of an act *in pais,* which may never be performed, and, therefore, ought not certainly in other respects to be more rigidly exacted. Aside from the power to sell, and the covenants on the part of the grantor, which can not enlarge or otherwise affect the estate, the terms of the deed are, with one exception, *in presenti,* and completed; and if they operate at all it must be instantly or against their own ordinary import. These terms are, " hath granted, bargained, and sold, and by these presents doth grant, bargain, and sell" 2200 lots in Sacramento city, with a vast quantity of other property specifically described; and afterwards, it is provided that if the $125,000 should be paid, in certain instalments, " then this instrument is to take effect as a full and complete conveyance, in fee, of all and singular the lands, tenements, hereditaments, appurtenances, and real estate in the State of California, belonging, etc., to the party of the first part." In all this, there is not the semblance of any agreement, on the part of the grantor, for further assurance, or of any other act to be done by him, but upon the happening of the event specified, that instrument was to take effect as a conveyance; and even if such event did happen, the instrument might be inoperative, by reason of the interposition of certain inexorable rules of law herein considered. The whole writing shows that Sutter, Jr., performed all his obligations when its execution was consummated. His vendees took it as then completed, and for what it was worth; and if worthless, and they were not the victims of his fraud, which is not pretended, they can not now complain. To hold otherwise, would be to add to the writing, even to make for the parties a

new contract presenting little or no analogy to that which they made for themselves. Courts can construe contracts, but here their power ends; they can not make or alter contracts.

But the clause from which it is argued to be a conveyance, on condition precedent, or an executory agreement, does not apply to the 2200 lots, nor to any of the property particularly described, but was intended to affect other property which the grantor was presumed to own in the State. The rule is, to construe the instrument so as to give effect to the whole if practicable; and to carry out the rule, it is necessary to give a specific effect to particular provisions as against those which are general. *Expressum facit cessare tacitum.* The 2200 lots, if they passed at all, were conveyed by the particular words "grant, bargain, etc.," in the former part of the deed, and the conditional or executory clause relates wholly to other lands. "Subsequent words shall not defeat precedent ones, if by construction they may stand together. But where there are two clauses in a deed, of which the latter is contradictory to the former, then the former shall stand." "If there is repugnancy in a deed, the first clause shall stand." "Whatever is expressly granted, etc., can not be restrained or diminished by subsequent restrictions, etc., but general or doubtful clauses precedent may be distributed or explained by subsequent words and clauses, not repugnant or contradictory to the express grant, covenant, etc." Nor can subsequent words or clauses repugnant to the express grant, demise, covenant, etc., enlarge such grant, etc." Greenleaf's Cruise, 300, 301, and notes; Cutter *v.* Tufts, 3 Pick. R., 272.

The doctrine here affirmed is not in conflict with that very respectable class of cases in which instruments for the sale of lands have even been construed as mere agreements, though they contained the usual expressions of a conveyance as grant, bargain, and sell, in the present tense. In those cases, it appeared from the whole instruments to have been the intention that the grantor was to make further assurance; but without words evidencing such intention, such further assurance ought not to be decreed; nor will the usual operative words of a conveyance be wrested from their common significance, unless there are other words in the writing with which they are in conflict. Such were the cases of Stouffer *v.* Coleman, 1 Yates R., 393, and Dawson *v.* Megill, 4 Whart., 220.

In these cases, the words grant, bargain, and sell, had been employed, but in neither was there any want of certainty, nor of mutuality, and in both there were express covenants, among other things, for further assurance. To give effect, therefore, to the whole instrument, it was necessary to restrict the ordinary import of the words employed; but here there is no such necessity. In this case the expression is not that upon the happening of the event *in pais* the vendor shall execute a conveyance; the

instrument itself was to take effect as a conveyance. But the question recurs, to take effect as a conveyance of what real estate? Could it be of that which was already specifically conveyed, or was it, as we contend, of all real estate of the grantor in California not therein previously conveyed? Proper technical words of conveyance *in presenti* had already been employed as to the 2200 lots, and other property of the vendor; and can their import and effect be wholly changed by a subsequent clause between which and the former there is, in no view, any necessary conflict? The affirmative would assert, for a mere subsequent conditional or executory clause, the potency of defeating or entirely changing the character of the very estate already created by the direct and positive terms of the deed; a proposition in conflict with all sense and authority.

It makes no difference that these direct and positive terms are inoperative for the want of mutuality and certainty, their effect can not be enlarged or impaired by other subsequent words relating to other real estate, and not to the lots in question. And although it may result that the deed as to the lots is void, yet its defects can not be aided by other provisions intended to affect other property; each distinct substantive provision must rest upon its own merits.

That these positions are correct will clearly appear from the face of the whole deed; for immediately after the supposed conveyance of the 2200 lots, and other property specifically described, there follows a distinct general warranty of title as to such. Then follows a distinct covenant to make (and, in the same sentence, an appointment of,) the parties of the second part the attorneys in fact of the vendor, to enter upon and take possession of, and to sell any of his lands and real estate in California. Then follows a covenant of the vendor not to sell any of his lands and real estate in the State, or to receive from any person or persons, any sum or sums of money which are due and owing to the said party of the first part, for the sale of any real estate, etc. Now, why make the respondent and others attorneys to take possession of and to sell, and why covenant himself not to sell that which had been already sold with warranty of title? And why the other covenants? They could not give any additional force to the conveyance *in presenti,* with warranty already made—and thus to give reasonable effect to all the different parts of the deed, we are forced to the conclusion that all its provisions, after that of general warranty, were intended to affect other real estate supposed to have been owned by the vendor.

It is conceded that if the instrument had referred to another, as constituting a part of the same agreement, then parol evidence would have been admissible to ascertain that to which such reference was made; but here there is no reference, and,

therefore, no pretext for the application of the exceptional rule. Clinmun *v.* Cooke, 1 Schooles & LeFroys, 32–3.

Where an agreement is reduced to writing, aside from the peculiar provisions of the statute as to such as affect lands, it is presumed to express the whole contract, to bind all the parties so far as they intended to be bound; and, in view of this rule, any other intention of the respondent and his co-purchasers, is wholly excluded. 2 Starkie's Ev., 548–9; 2 Cow. and Hill's notes to Phil. on Ev., 593, 595, 598; King, adm'r, *v.* Wood, 7 Mo. R., 390.

The test of the admissibility of parol evidence in general cases, is, whether it will vary the written instrument. If so, it is inadmissible, and here such evidence would supply a consideration where there is none, and bind those who are not bound by the terms of their own agreement. *A fortiori* do these considerations control in written contracts as to lands. Massey *v.* Belisle, 2 Iredell, 170; Taney *v.* Batchell, 9 Gill's R., 206; Church of Advent *v.* Farrow, 1 Rid. Eq., 378.

That it is not a valid conveyance *in presenti* is already adjudged; and it is, then, to be regarded either as a conveyance on condition precedent or an executory agreement. In either case, to subject the appellant to this action it ought to be shown that he had legal notice of the instrument, and of the payment therein specified. In their argument below, it seems to have escaped the attention of the counsel for the respondent that it might be effectual as between the parties, and yet its recordation, even if allowed by law, be insufficient to bind or affect third persons! In one of the principal cases cited by themselves, it is held that a conveyance of all the estate, both real and personal, to which the grantor is entitled, in law or equity, is valid to pass his whole estate; but the registry of a deed, conveying land by such general description, is not notice in law to subsequent purchasers from the grantor of the existence of such deed. And even actual notice of such deed, and of its contents, would not affect such purchaser unless he had notice that the land purchased by him was included in the deed; and the proof of such notice must be such as to affect the conscience of the purchaser—and is not sufficient if it merely puts him on inquiry. It should be so clear and strong as to fix upon him the imputation of *mala fides.* Munday *v.* Vawter and others, 3 Grat. R., 518.

Those decisions which apply to a definite ascertained portion of property will not extend to a vague and indefinite contract of this kind: it being a leading principle that to affect a subsequent purchaser on the ground of implied notice of a former title, there must be something to lead such purchaser distinctly to a knowledge of such title, with reference to the identical specific

property in question.   Lewis *v.* Madison, 1 Munf. R., 303; French *v.* Loyal Co., 5 Leigh, 627.

Admit that the appellant had notice of these contents, still it was only of these contents—he " could only be chargeable with constructive notice from the record where the record itself would give actual notice;" but here the writing itself did not give the requisite notice.   Jennings *v.* Wood, 20 Ohio R., 261.

To fix fraud, the proof of notice must be clear; if it is doubtful, a presumption of fraud will not take place.   Curtis *v.* Lume, 6 Munf., 42.

*Jo. G. Baldwin,* for Appellant, made an argument in support of the ground taken by Mr. Edwards.

*H. O. Beatty* for Respondent.

TERRY, C. J., after stating the facts, delivered the opinion of the Court—BURNETT, J., and FIELD, J., concurring.

The case, as presented by the record, involves three questions:

*First,* as to the character of the conveyance from Sutter to Brannan and others.

*Second,* the effect of the registration; and,

*Third,* whether the conditions were performed by the vendees.

The objection on the ground that one of the grantees was the trustee or agent of Sutter, and that the purchase was a fraud on his *cestui que trust,* is not supported by the record.   The only evidence on this point is that of Wetzlar, who says that he was requested by Sutter to find purchasers for the land; that he found parties who were willing to purchase three-fourths, and that Sutter himself requested Wetzlar to become the purchaser of the remaining one-fourth upon the terms already agreed on between Sutter and Brannan.

There is no evidence that Wetzlar sustained any fiduciary relation with Sutter, or had any peculiar knowledge of his affairs, before the execution of the deed; his agency, according to the evidence, began after that period.

The first step in the construction of a deed is to ascertain the understanding and intention of the parties at the time of contracting.

" When it is necessary to give an opinion upon the doubtful words of the deed, the first thing we ought to inquire into is, what was the intention of the parties?   If the intention of the parties be as doubtful as the words, it will be of no assistance at all; but if the intent of the parties be plain and clear, we ought, if possible, to put such a construction on the doubtful words of a deed as will best answer the intent of the parties, and reject

that construction which manifestly tends to overturn and destroy it." (Parkhurst *v.* Smith, Willes, 322.)

To arrive at this intention, the situation of the parties, and the subject-matter at the time of contracting, should be considered; the whole deed should be taken together, and, if possible, effect should be given to all of its parts. "It is a true and important rule of construction, that the sense and meaning of the parties to any particular instrument, should be collected *ex antecedentibus et consequentibus;* that is to say, every part of it should be brought into action, in order to collect from the whole, one uniform and consistent sense, if that may be done; or, in other words, the construction must be made upon the entire instrument, and not merely upon disjointed parts of it; the whole context must be considered in endeavoring to collect the intention of the parties, although the immediate object of inquiry be the meaning of an isolated clause. In short, the law will judge of a deed or other instrument, consisting of divers parts or clauses, by looking at the whole; and will give to each part its proper office, so as to ascertain and carry out the intention of the parties." (Broom's Legal Maxims, 442.)

The reason of this rule is, that the "same parties make all the contract, and may be supposed to have the same purpose and object in view in all of it; and if this purpose is more clear and certain in some parts than in others, those which are obscure may be illustrated by the light of others." (2 Parsons, 14.) If several instruments are made at the same time, by the same parties, and in relation to the same subject, the intention of the parties is to be gathered from all the instruments, taken together, and the recitals in each may be explained or corrected by reference to any other. (Ib., 15.) Oral evidence is sometimes admissible to explain, but not to contradict or vary the terms of a written contract; thus, if the words of a contract be ambiguous, its meaning may be gathered from contemporaneous facts which intrinsic testimony establishes. If, when the intention is thus ascertained, it is found that the words will fairly bear a construction which makes them express this intention, then the words will be so construed, and the contract in this sense, or with this interpretation, will be enforced as the contract which the parties had made. The distinctions between patent and latent ambiguities, are now regarded as intended to enable the Court to distinguish between cases curable and those of incurable uncertainty; to carry the aid of evidence as far as it can go, without making for the parties what they did not make for themselves. (2 Parsons, 75.)

Taking the deed from Sutter to Brannan and others as a whole, and testing it by the above rules, it is clear that Sutter intended to convey all his real estate in California; but, in view of the state of affairs then existing, he was unwilling to part with the

legal title until his vendees had fully complied with the conditions of the sale.   At the time of making the contract, California had just completed the organization of a State government; the operation of the judiciary system adopted had not been tested; the population was unsettled; sudden changes in the fortunes of individuals were constantly occurring, and personal security was of little value.   It was, therefore, natural that a party disposing of valuable real estate should retain the legal title in himself as the best possible security for the payment of the purchase-money.

We are satisfied that the deed in question was intended as a conveyance upon condition precedent, and that the grantees could acquire no title under it until the condition had been performed.   If it had been intended as a conveyance *in presenti,* there could have been no necessity for inserting the power of attorney to enable the grantees to dispose of their own property, nor for providing that the instrument should take effect as a conveyance upon the happening of an event *in futuro.*   That this was the construction given to the instrument by the grantees, is shown by the fact that they assumed to act in the disposition of the property as the agents of Sutter, under the power of attorney contained in the instrument, and not in their own right. It is perfectly consistent with the words of the whole instrument, taken together, and is the only one which will give effect to all its clauses.

The instrument in question was before the Court in the case of Mesick *v.* Sunderland, (6 Cal., 308,) and was held to be not a conveyance *in presenti,* nor a conveyance in fee, with lien reserved, but "an executory agreement for the sale of property therein described; or a conveyance on condition precedent, depending for its validity on the performance of an act *in pais,*" and that its registration imparted no notice of its contents.

The case involved many interesting and novel points, which were argued, at great length, by able counsel.   The attention of the Court was not directed—either in the oral argument or briefs on file—to the marked distinction which is recognized in the books between conveyances upon condition precedent and executory contracts which are mere agreements to convey.   It is, therefore, not surprising that the Court should have overlooked the distinction which had escaped notice of the learned and ingenious counsel who argued the case, however important such a distinction may have been, in view of the peculiar phraseology of the Registration Act.

The Act concerning Conveyances, passed 1850, provides that every conveyance whereby any real estate is conveyed, or may be effected, which shall be acknowledged and recorded pursuant to the act, shall, from the date of filing with the recorder, impart

notice to all persons of its contents, and all subsequent purchasers and mortgagees shall be deemed to purchase with notice.

The term conveyance, as defined by the thirty-sixth section of the act, embraces " every instrument in writing, by which any real estate, or any interest in real estate is created, aliened, mortgaged, or assigned, except wills, leases for a term not exceeding one year, executory contracts for the sale or purchase of lands, and powers of attorney."

A deed on condition precedent vests the title in the grantee, on the performance of the condition, without any further act on the part of the grantor, and being " an instrument in writing affecting real estate," not within the exception mentioned in the thirty-sixth section of the Registration Act, its record imparts notice of its contents to all persons.

Mesick must be deemed a purchaser with notice. The registration of the deed was sufficient to put him upon inquiry as to the performance of the condition, and he stands in the same relation to the plaintiff as his immediate grantor. As the validity of plaintiff's title depends upon compliance on his part with the conditions of the deed, and the evidence of this fact rests in parol the deed from Sutter to Mesick, which in effect denies the compliance, it is a cloud upon his title which a Court of Equity, under proper circumstances, will remove. But in order to entitle himself to equitable relief, it is necessary to show a performance in good faith of every duty imposed upon him by the deed.

" Conditions precedent are such as must happen, or be performed, before the estate can vest or be enlarged ; they admit of no latitude ; they must be strictly, literally, and punctually performed. It is a known maxim, that where the estate is to arise upon a condition precedent, it can not vest till that condition is performed, and this has been so strongly adhered to, that even where the condition has become impossible, no estate or interest grew thereupon. Where a condition copulative precedes an estate, the whole must be performed before the estate can arise ; or where an act is previous to any estate, and that act consists of several particulars, every particular must be performed before the estate can vest or take effect." (2 Dallas, 317.)

Payment of the purchase-money being a condition precedent to the vesting of title in the plaintiff, it follows that unless such payment was made, the legal title remained in Sutter, and passed to Mesick under the deed of July, 1855.

On the question of payment, the evidence is by no means satisfactory. The receipts amount only to *prima facie* evidence, which may be rebutted by oral testimony. The fact that they were acknowledged before a notary, imparts to them no additional weight. A receipt is not regarded as a contract, and hardly as an instrument at all, and has but little more force than the oral admission of the party receiving. (2 Parsons, 68.)

Whether the fact of acknowledging the receipt of the consideration, and neglecting for a long period of time to assert title to the property conveyed, would estop Sutter or his grantee from denying the performance of the condition upon which the legal title was to pass, as against innocent purchasers from Brannan and his associates, is a question which does not arise in this case; he is certainly not concluded by these acts in a controversy with the original parties to the conveyance.

It is shown by the plaintiff's witness that the money was not, in fact, paid; that Sutter was induced to make a deduction of over forty thousand dollars, upon a representation that a portion of the property conveyed had been previously deeded away by Sutter, which representation, it appears, was not true.   It also appears that an amount of money due Sutter on a former sale of lands, and secured by mortgage, was collected by Wetzlar under his power of attorney, and appropriated to the use of Brannan & Co., under the claim that the conveyance of June, 1850, had operated as an assignment of the debt.

The testimony of Wetzlar, one of the original parties to the deed, taken in connection with his manifest prevarication on many points, and the fact that his memory was totally at fault as to transactions concerning the same property in which he was personally engaged subsequent to the execution of the deed, while it was perfect as to the occurrences at the time of its execution, raise a strong presumption of fraud as to the settlement.

We think the evidence of payment was not sufficient to entitle the plaintiff to relief in a Court of Equity.

Judgment reversed, and bill dismissed.