[14775. Department Two.—June 3, 1893.]

## CITY OF STOCKTON, APPELLANT, *v.* HELEN WEBER ET AL., RESPONDENTS.

CEMETERY—TITLE TO LAND USED FOR BURIAL PURPOSES—ABANDONMENT OF USE—POLITICAL CODE NOT RETROACTIVE.—Under the act of 1854 which provided that "where the bodies of six or more persons are buried such place is a public graveyard," the title to land used for burial purposes remained in the owner thereof, subject to such use, and an abandonment of the ground for such use, prior to the enactment of section 3105 of the Political Code, which vests title in the inhabitants of a city or town to lands "used as a public cemetery," left the absolute title discharged from such use in the owner of the land, and such title remained unaffected by section 3105 of the Political Code, which is not retroactive in its terms or effect.

ID.—GRANT FOR ORNAMENTAL SQUARE—CONDITION PRECEDENT.—A proviso in a grant, bargain and sale deed of a block of land to a city, to be kept as an ornamental square and for the erection of public buildings thereon, "provided the city by its legal representatives obtains authority from the legislature of this state, and makes the necessary removals of the dead from the said block within

XCVIII. CAL.—28

twelve months from the first day of January, A. D. 1891," is a condition prece-
dent, and the failure of the city to perform such condition prevents title from
vesting in the city under the deed.

ID. — CONDITION FOR LEGISLATURE — VALIDITY. — The condition in the deed that the
city obtained authority from the legislature to make the necessary removals of the
dead, is, not void as being in conflict with subdivision 7 of section 25 of article
IV. of the constitution prohibiting special legislation authorizing the vacating
of cemeteries, as the condition might have been performed by the enactment
of a general law under which the removals might have been lawfully made.

ID. — CONSTRUCTION OF DEED. — In the construction of a deed the understanding
and intention of the parties at the time of contracting should be first ascer-
tained; and to arrive at this intention the situation of the parties and the sub-
ject-matter at the time of contracting should be considered. The whole of the
contents should be considered to collect the intention of the parties, although
the immediate object of inquiry be the meaning of an isolated clause.

ID. — STATEMENT OF CONDITION PRECEDENT. — The use of words in a deed expressly
stating that the title shall only vest upon the performance of a condition prece-
dent is not necessary in order to create such a condition. The word "pro-
vided" expresses as much and is one of the apt words commonly used to create
a condition.

ID. — EFFECT OF PROVISO. — A "proviso" in deeds and laws is a limitation or ex-
ception to the grant made or authority conferred, the effect of which is to de-
clare that the one shall not operate or the other be exercised unless in the case
provided. It always implies a condition unless subsequent words change it
into a covenant.

ID. — EFFECT OF IMPOSSIBLE CONDITION PRECEDENT — VESTING OF ESTATE. — A con-
dition precedent, though impossible from the beginning, or for any reason in-
capable of performance, is not for that reason void, but operates to prevent the
estate from vesting.

ID. — BREACH OF CONDITION SUBSEQUENT — RECOGNITION OF GRANTOR'S TITLE —
QUIETING TITLE. — Where the time for the performance of a condition subse-
quent is passed without performance or any attempt at performance of it, and
the title of the grantor has been recognized after the breach of the condition,
the grantee cannot maintain an action to quiet title against the grantor.

APPEAL from a judgment of the Superior Court of San
Joaquin County.

The facts are stated in the opinion.

*Swinnerton & Rutherford,* for Appellant.

Where land is once dedicated to public use as a graveyard,
the fact that no interments have been made for a long time will
not authorize the presumption that it has ceased to be a public
graveyard. (*Stockton* v. *Newark,* 11 East Rep. [N. J.] 113;
*Weisenberg* v. *Truman,* 58 Cal. 63.) The land having been
used as a burial ground for five years and more than six per-
sons being buried there, the title thereto is vested in the city.
(Act February 16, 1854, pp. 6, 7, sec. 4; Pol. Code, secs. 3105,

3106.)  The question of dedication is one of intent, all that is
necessary is the assent of the owner, and the fact that the land
has been used by the public.  (*Biddle* v. *Ash*, 2 Ashm. 211;
*Marcy* v. *Taylor*, 19 Ill. 634; *Mayor of Macon* v. *Franklin*, 12
Ga. 239; *Hall* v. *McLeod*, 2 Met. [Ky.] 98; *Institute* v. *How*,
27 Mo. 211; *Oswald* v. *Grenet*, 22 Tex. 94.)  The provision in
the deed as to the removal of the dead, if a condition subsequent,
is void, as it requires the performance of an unlawful act.
(Const., art. IV., sec. 25, subd. 7.)  The condition being void,
the grantor takes an unconditional, absolute estate.  (2 Wash-
burn on Real Property, sec. 6.)  But the recital is not a con-
dition subsequent, as it is necessary, in order to create such a
condition, that appropriate words be appended to the grant
which *ex vi termini* import that the vesting or continuance of
the estate is to depend upon the condition.  (*Craig* v. *Wells*, 11
N. Y. 320; *Jackson* v. *McClallen*, 8 Cowen, 296; *Cullen* v.
*Sprigg*, 83 Cal. 56.  See also Washburn on Real Property,
secs. 4–10; *Stone* v. *Houghton*, 139 Mass. 175; *City of Portland*
v. *Terwilliger*, 16 Or. 465; *Ludlow* v. *New York etc. R. R. Co.*,
12 Barb. 440; *Hihn* v. *Peck*, 30 Cal. 281; *Ferris* v. *Coover*, 10
Cal. 589.)

*James H. Budd*, for Respondents.

HAYNES, C. — This action is brought by the city of Stockton
to quiet title to "block 237 east of Center Street" in said city,
which prior to 1872 was outside the city limits.  The com-
plaint alleges that prior to 1860, Charles M. Weber was the
owner of the block in question, and dedicated it to the public
as a cemetery, and that such dedication was accepted by the
public prior to that year.

The fourth paragraph of the complaint is as follows: "That
on the twelfth day of May, 1880, said Charles M. Weber, by
a deed signed, sealed, and acknowledged by him and by him
delivered to plaintiff, sold, granted, bargained, and conveyed to
plaintiff said block No. 237, to be preserved and kept as an
ornamental square and for the erection of public buildings
thereon, and ever since the said delivery of said deed plaintiff
has been and now is the owner in fee of said block No. 237, sub-
ject to the use thereof as a public cemetery and to be kept by

plaintiff as an ornamental square and for the erection of public buildings thereon."

Charles M. Weber died in 1881, and respondents, his widow and heirs, claim title in fee.

The answer sets out the deed mentioned in the complaint. It is a bargain and sale deed for the expressed consideration of one dollar. Following the granting part and description of the property, down to the *in testimonium* clause, the deed. is as follows: —

"Provided the city by its legal representatives obtains authority from the legislature of this state and makes the necessary removals of the dead from the said block within twelve months from the first day of January, A. D. 1881.

"Said city to preserve the same as an ornamental public square or use it for the erection of public buildings, without any right to sell or dispose of the same for private uses, and to revert back to and become the property of said Weber, his heirs or legal representatives, in the event of sale, or otherwise for private uses, and the title to the same to be as valid in such event as if this deed had never been made.

"To have and to hold all and singular the above-mentioned and described premises, together with the appurtenances, unto the said party of the second part and to its assigns forever, subject to the foregoing conditions."

The answer denied the dedication of the block as a public cemetery, or that any dedication for such purpose was accepted by the public; admitted that prior to 1860, Weber permitted a large number of bodies to be buried there, and gave verbal license therefor, but that no time was fixed during which the bodies should remain or when they should be removed; alleged that the city accepted the delivery of the deed upon the condition expressed therein, and under an agreement to carry out' said conditions before title should vest thereunder, and that the city had never procured such act of the legislature, nor removed the bodies of the dead, nor improved the block.

Findings and judgment passed for defendants, and plaintiff appeals upon the judgment-roll and a bill of exceptions.

The court found that for about ten years prior to 1860, Charles M. Weber was the owner of a tract of land adjacent

to the city of Stockton, that he surveyed and platted the same into lots and blocks and public streets, a part of which is the block in question, and that said Weber until his death, and since that time the defendants, his heirs, owned said tract so laid out, continuously from the year 1860 to the time of the trial of this action, and are in the exclusive possession thereof; that prior to 1860, said Charles M. Weber permitted a number of dead bodies to be buried in said block under a verbal license; that no time was fixed or agreed upon during which they should remain, nor when they should be removed; that said Charles M. Weber, deceased, and his heirs always reserved his and their rights as the absolute owners of said block in fee-simple; that no burials were ever permitted by Charles M. Weber without a reservation of all his rights in and to said block and the whole thereof, and never consented to its use by the public as a burial ground; that no part of it was ever used by the public for a burial ground for five years, nor was there ever an uninterrupted use thereof by the public for any purpose, and that it never was dedicated to nor accepted by the public as a cemetery.

The testimony shows that the first interment in that block was in or about 1852, and the last in the spring of 1862; that about 1861 the "Rural Cemetery" was established, and that prior to the execution of said deed nearly all the bodies had been removed from that block. The number remaining is not definitely shown, but said to be "six or more."

Appellant contends that the finding that there was no dedication to nor acceptance by the public of the block in question as a public burial ground is not sustained by the evidence, and cites the act of 1854, which declared that "where the bodies of six or more persons are buried such place is a public graveyard"; but whether it was or was not a public graveyard is immaterial, unless that fact divested the legal title of Weber. Upon this point counsel for appellant cites section 3105 of the Political Code, which is as follows:—

"The title to lands used as a public cemetery or graveyard, situated in or near to any city, town, or village, and used by the inhabitants thereof continuously, without interruption, as a burial ground for five years, is vested in the inhabitants of such

city, town, or village, and the lands must not be used for any other purpose than a public cemetery."

Section 3106 of the Political Code re-enacts the above-mentioned provision of the act of 1854, omitting the word "public," so that it now reads: "Six or more human bodies being buried at one place constitutes the place a cemetery."

These provisions of the Political Code took effect January 1, 1873, and by section 3 of the same code it is declared that "no part of it is retroactive, unless expressly so declared."

Section 3105 vests title in the inhabitants of, etc., only to lands "used as a public cemetery or graveyard," whilst under the following section the place where six or more bodies are buried is a cemetery, though not used as a public cemetery or graveyard.

The block in question ceased to be used for the burial of the dead more than ten years before this section of the code was enacted, and not being then used as a public cemetery, Weber's title was unaffected by its enactment. Whether that section operates in any case to divest the title absolutely, or further than is necessary to the use, leaving it to revert to the original owner when the ground is abandoned and all the bodies removed, is not considered or decided. That the title to the block in controversy remained in Weber, notwithstanding the use of the ground for burial purposes, subject to such use and that the abandonment of the ground for such use, and the removal of all the bodies would leave the absolute title discharged from such use in the respondents, is fully sustained by *Schlessinger* v. *Mallard*, 70 Cal. 326. There the city of Los Angeles conveyed certain public lands in 1857 to three trustees, of whom Mallard was the survivor, in trust for the purpose of a city cemetery. A portion of the land was so used until 1861, when the city by ordinance discontinued its use and provided for the removal of the bodies, and all except a few were removed. In 1870 the city conveyed to plaintiff, who brought an action against the surviving trustee to compel a conveyance, and the action was sustained. The circumstance that the legislature confirmed the conveyance by the city to the plaintiff did not, we think, affect plaintiff's title.

Appellant further contends that the deed made by Weber in May, 1880, conveyed the title to the city, to be preserved and

kept as an ornamental square and for the erection of public buildings thereon, "subject to the use thereof as a public cemetery."

Respondents contend that the deed contained a condition precedent which was never performed by the city, and that therefore no title ever vested in appellant.

It is expressly conceded that no act of the legislature was procured under which the bodies might lawfully be removed, and that none were removed by the city; and if the clause relating thereto is a condition precedent, it is plain no title under the deed has vested in appellant. Appellant's construction of this deed cannot be sustained.

The use of the block as an ornamental public square and the erection of public buildings is inconsistent with "the use thereof as a public cemetery." The deed, however, required the use as a cemetery to be absolutely ended by the removal of all bodies then remaining therein within twelve months from January 1, 1881. These uses being inconsistent, could not co-exist, and it was plainly the intention that they should not.

"The first step in the construction of a deed is to ascertain the understanding and intention of the parties at the time of contracting. . . . . To arrive at this intention, the situation of the parties and the subject-matter at the time of contracting should be considered. . . . . The whole of the context must be considered to collect the intention of the parties, although the immediate object of inquiry be the meaning of an isolated clause." (*Brannan* v. *Mesick,* 10 Cal. 95, 106.)

Weber then owned, and respondents still own, a large amount of property in the vicinity of this block. It was obviously to his interest, in view of the remainder of his property, that this block should be devoted to other purposes. So long as any of the bodies buried there remained, it tended to depreciate the value of the remainder of his property, while its improvement as an ornamental square, or by the erection of city buildings, would enhance the value of his other property. The deed clearly shows an intention on the part of the grantor to terminate its use as a cemetery, and that such termination being first accomplished, that it should then be devoted to the other use. If its use as a cemetery was to continue, there was no reason

why the conveyance should be made, and none for the requirement that the bodies should be removed. The consideration named in the deed was merely nominal. The true consideration was the removal of the dead from the vicinity of his other property, and the future improvement and use of the block for the other purposes named, nor was there any necessity that the title should pass until the bodies were removed. It would, therefore, seem clear that the intention of the parties was that the removal of the dead then remaining should be a consideration precedent to the vesting of title in appellant. The real intention, it is true, would not avail unless the language used is capable of a reasonable construction which would effectuate that intention. Here, however, the language used was apt and appropriate to express that intention. The grant is immediately followed by the proviso: "Provided the city by its legal representatives obtains authority from the legislature of this state and makes the necessary removals of the dead from said block within twelve months from the first day of January, 1881."

"A proviso in deeds and laws is a limitation or exception to a grant made or authority conferred, the effect of which is to declare that *the one shall not operate* or the other be exercised, unless in the case provided." (*Voorhees* v. *Bank of United States*, 10 Peters, 471.) "It always implies a condition unless subsequent words change it to a covenant." (Bouvier's Law Dict., title "Proviso.") "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." (Civ. Code, sec. 1436.) Counsel for appellant argue that if this were a condition, the grantor would have stated in the deed that the title would not vest until the condition was performed, or on failure to perform, that the title would revert, and that this is clear because the deed does state on what condition a reverter will take place, viz., if the grantee sells or disposes of the ground to private uses; but the use of words expressly stating that the title shall only vest upon performance of a condition precedent is not necessary. The word "provided" expresses as much, and is one of the apt words commonly used to create a condition. (*Raley* v. *Umatilla Co.*, 15 Or. 172; 3 Am. St. Rep. 142; *Gibert* v. *Peteler*, 38 N. Y. 168.) The first condi-

tion prevented the estate from vesting, if not performed, and in such case there could be no reverter; but a condition subsequent does not prevent the estate from vesting, and therefore upon a breach the grantor cannot again have the title except by a reverter, based upon the breach and a re-entry therefor; but it is further contended that the condition under consideration requires an unlawful act, and is therefore void. Counsel base this contention upon article IV., section 25, subdivision 7 of the constitution, prohibiting special legislature, authorizing among other things, "vacating cemeteries." But this provision of the constitution does not prohibit the enactment of a general law under which the removals might have been lawfully made. The condition was not that the removal of the bodies be made without authority of law, but that the grantee would procure the enactment of a law permitting it, and making the removal lawful. If the necessary legislation could not be obtained, it simply made the condition impossible of performance, not unlawful. A condition subsequent, which is impossible of performance, is void, but not so with a condition precedent. "If a condition precedent is impossible from the beginning, or for any reason incapable of performance, the estate will not vest." (Devlin on Deeds, sec. 964, and cases there cited.)

If it were possible to construe this proviso as a condition subsequent, appellant would be in no better situation. The time limited for the performance of the act has passed, the condition has not only not been performed, but no effort has been made to perform it. For several years the city has assessed this block to respondents, who have paid the city taxes thereon. Under these facts it is not perceived upon what ground appellant could maintain an action to quiet title against respondents.

These views render a consideration of the other findings unnecessary.

The judgment appealed from should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment appealed from is affirmed.

MCFARLAND, J., FITZGERALD, J., DE HAVEN, J.