[Civ. No. 20044. Third Dist. Feb. 8, 1982.]

WANA THE BEAR, Plaintiff and Appellant, v.
COMMUNITY CONSTRUCTION, INC., Defendant and
Respondent.

**COUNSEL**

Drivon & Bakerink, Larry Drivon and Michael J. Barkett, Jr., for Plaintiff and Appellant.

Cohen & Ziskin, Terry S. Kaplan and Jacob N. Segura for Defendant and Respondent.

**OPINION**

**BLEASE, J.**—Plaintiff Wana the Bear, a direct descendant of the Bear People Lodge of the Miwok Indians, seeks reversal of a judgment that the Native American burial ground under development by defendant Community Construction, Inc., is not a cemetery entitled to protection under the California cemetery law.

This case comes to us shrouded in the history of an ancient Indian people whose remains, bulldozed from their resting place, stir the anguish of their descendants. But there is no succor for these profound

sensitivities in the law to which plaintiff appeals,[1] the sepulchral confines of the California cemetery law.[2] We affirm the judgment.

## FACTS

This case arises on the granting of "[a] demurrer [which] admits all material and issuable facts properly pleaded. [Citations.]" (*Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; *California State Police Assn.* v. *State of California* (1981) 120 Cal.App.3d 674, 680 [175 Cal.Rptr. 34].) We set out the facts accordingly.

On August 6, 1979, a final subdivision map was approved by the Stockton City Council and defendant went about excavating the subject property in the course of developing a residential tract.[3] (Gov. Code, § 66426.) In the fall of 1979, defendant uncovered human remains on the property. Defendant continued developing the property, disinterring the remains of over 200 human beings. The burial ground had been used by the Miwok Indians until they were driven out of the area between 1850 and 1870. The site is known to be a burial ground and has been the subject of numerous archeological studies. The site still contains the remains of six or more persons. Plaintiff, a descendant of the Bear People Lodge of the Miwok Indians and related to some or all of the persons whose remains lie there, brought suit to enjoin further excavation and other "desecration" of the property on July 1, 1980. The trial court sustained defendant's demurrer without leave to amend and plaintiff appealed from the resulting judgment of dismissal.

## DISCUSSION

The central issue in this case is whether the burial ground achieved a protectable status as a public cemetery under the 1872 cemetery law by virtue of its prior status as a public graveyard. We hold that it did not.

---

[1]Although he complained of "desecration" of the burial ground in his complaint, plaintiff does not contend that the failure to accord protection to the burial grounds of Native Americans impinges on First Amendment religious values. And he has abandoned claims urged below that the burial grounds are of archeological and historical significance.

[2]Had the burial ground been on public land, a different result would obtain. The present law protects Native American burial grounds on public lands. (Pub. Resources Code, §§ 5097.2, 5097.5.)

[3]At defendant's request, we take judicial notice of the city council's resolution. (Evid. Code, § 452, subd. (b).)

Plaintiff seeks enforcement by injunction of Health and Safety Code section 7052,[4] which makes criminal the disinterment of human remains without authority of law.[5] He argues that the section protects a cemetery,[6] as defined by Health and Safety Code section 8100: "Six or more human bodies being buried at one place constitute the place a cemetery." He alleges, and we take it as true, that six or more human bodies are buried on the burial site. In order to escape the problem that the burial site does not comply with either of the two methods of creating a public cemetery, dedication (Health & Saf. Code, §§ 7003,[7]

---

[4]Health and Safety Code section 7052 provides: "Every person who mutilates, disinters, or removes from the place of interment any human remains without authority of law, is guilty of a felony. This section does not apply to any person who removes the remains of a relative or friend for reinterment."

[5]Injunctive relief is not available to enforce penal laws "except in a case of nuisance or as otherwise provided by law." (Civ. Code, § 3369; see *Perrin* v. *Mountain View Mausoleum Assn.* (1929) 206 Cal. 669 [275 P. 787] [injunctive relief denied where erection of mausoleum arguably violated zoning ordinances and cemetery was not per se a nuisance]; *Carter* v. *Chotiner* (1930) 210 Cal. 288 [291 P. 577] [injunction denied for failure to obtain a permit to operate a cemetery close to dwellings].) However, Health and Safety Code section 7052 is not alone in protecting human remains from disinterment. Other nonpenal statutes operate in conjunction with it. Section 7500 of the Health and Safety Code permits removal of remains from a cemetery only upon written order of the local health department or the superior court of the county. The cemetery must keep a copy of the order authorizing removal and the person removing the remains must maintain a record of the removal. Section 7700 also authorizes the governing body of a city or city and county with a population over 100,000 to order the disinterment and removal of human remains interred in all or part of a cemetery, five acres or larger in area, within its limits, where burials there have been prohibited for 15 years or more and the health, safety, comfort, or welfare of the public is threatened. Notice of such removal is required to be given to plot owners and their heirs and to friends and relatives who ask to be present. (Health & Saf. Code, §§ 7725-7754.) A county may also, in certain circumstances (e.g., where it is "necessary that the property be used for other purposes") remove remains from a county cemetery. (Health & Saf. Code, §§ 8000-8004.) In light of these other provisions, we reach the merits of plaintiff's claim.

[6]Section 7052 applies to cemeteries by use of the term "interment," which is defined in Health and Safety Code section 7009 to include "burial in a cemetery."

[7]Health and Safety Code section 7003 defines "'[c]emetery'" as "any one, or a combination of more than one, of the following, in a place used, or intended to be used, *and dedicated*, for cemetery purposes: [¶] (a) A burial park, for earth interments. [¶] (b) A mausoleum, for crypt or vault interments. [¶] (c) A crematory, or a crematory and columbarium, for cinerary interments." (Italics added.) Dedication is a land use planning concept, used in other contexts as well. (See Gov. Code, § 66477.2 [subdivision maps].) The manner of dedicating land to cemetery uses is governed by Health and Safety Code sections 8125 (public cemeteries) and 8550-8561 (private cemeteries). Section 7003's definition of "cemetery" is derived from the 1931 General Cemetery Act, which governed private cemeteries. Section 2 of the act defined "'cemetery,' within the meaning of this act, ... as a place dedicated to and used and intended to be used for the permanent interment of the human dead...." (Stats. 1931, ch. 1148, § 2, p. 2435.) Section 7 of the act prescribed the manner of dedicating property for such purposes. (*Id.*, at § 7, p. 2438.)

8125[8]) or prescriptive use (Health & Saf. Code, §§ 8100, 8126[9]), plaintiff argues that section 8100, by virtue of its derivation from the 1854 cemetery law, applies to burial sites created prior to 1873 which, he claims, became public cemeteries, by the law of 1854, without dedication or prescriptive use.[10]

The 1854 law made punishable the mutilation of any public graveyard and the disinterment of any deceased person in any graveyard. It defined a public graveyard as follows: "Where the bodies of six or more persons are buried, it is . . . a public graveyard."[11] In 1872, this statute was replaced by title VII, chapter V of the new Political Code.[12] It enacted the two means for creating a public cemetery, dedication and prescriptive use. Section 3106 of the Political Code read essentially as Health and Safety Code section 8100 does now: "Six or more human bodies being buried at one place constitutes the place a cemetery." Section 3105 vested title to lands "used as a public cemetery or graveyard, situated in or near to any city, town, or village, *and used by the inhabitants thereof continuously, without interruption, as a burial-ground for five years*" in the inhabitants and prohibited use of the lands "for any other purpose than a public cemetery." Section 3107 delineated the

---

[8]Health and Safety Code section 8125 provides: "Incorporated cities, and for unincorporated towns the supervisors of the county, may survey, lay out, and dedicate for burial purposes not exceeding five acres of public lands situated in or near the city or town. The survey, description, and a certified copy of the order made constituting the land a cemetery shall be recorded in the recorder's office of the county in which it is located."

[9]Health and Safety Code section 8126 provides: "The title to lands situated in or near any city and used by the inhabitants without interruption as a cemetery for five years is vested in the inhabitants of the city and the lands shall not be used except as a public cemetery."

[10]It is not plaintiff's position that section 8100 makes any place where six people are buried (e.g., by a mass murderer) a cemetery. He conceded at trial that a reasonable reading of the current statutory scheme requires either dedication or prescriptive use to constitute a place a cemetery.

[11]The statute said: "Any person or persons who shall enter or molest the enclosure of a public graveyard, for agricultural, mining, or any other purpose, or who shall disinter, mutilate, or remove the body of any deceased person, after the same has been interred in any graveyard, vault, or other place of burial, shall be deemed guilty of a misdemeanor .... *Provided*, that nothing herein contained shall be construed to prevent the relations or their agents from removing the body of a deceased relative or friend." This law also punished the tearing down or destruction of the fence around, or trees in, a public graveyard. Section 3 of the act limited the area of graveyards on public lands. Finally, section 4 provided: "Where the bodies of six or more persons are buried, it is hereby declared a public grave yard." (Stats. 1854, ch. VIII, p. 20.)

[12]The predecessor section to Health and Safety Code section 7052, Penal Code section 290, was also enacted at the same time, prohibiting unauthorized mutilation or disinterment of human remains.

manner of *dedicating* public lands to "cemetery" or burial purposes. When the Health and Safety Code was created in 1939, these provisions were carried over into the present law. (Health & Saf. Code, §§ 7003, 8100, 8125, 8126, added by Stats. 1939, ch. 60, §§ 7003, 8100, 8125, 8126, pp. 670, 696, 697.)

■ Plaintiff claims that the presence of six or more bodies at the burial site in the period between 1854 and the time when the Miwoks were driven out (sometime between 1850 and 1870) rendered the burial ground a "public grave yard," indelibly impressing it with such character.[13] But the 1854 law was not incorporated into the 1872 and subsequent law, as claimed by plaintiff. The 1872 law did not simply reenact section 4 of the 1854 act (making a place where six bodies were buried a "public graveyard"). It added a prescriptive use condition, vesting title of the graveyard in the city or village using it *only* when the land was "used as a public cemetery ... continuously, without interruption, as a burial-ground for five years."[14] It further declared that "[n]o part of [the code was] retroactive unless expressly so declared." In *Stockton* v. *Weber* (1893) 98 Cal. 433 [33 P. 332], these provisions were applied to defeat a claim that a rural cemetery became vested in the public because the plot "ceased to be used for the burial of the dead more than ten years before [the 1872] section of the code was enacted, and [when the new law took effect was] not being ... *used* as a *public* cemetery." (*Id.*, at p. 438.) The Miwoks were no longer using the burial ground in 1873, when title VII, chapter V of the Political Code replaced the 1854 law; therefore, the burial ground was not made a cemetery by the operation of new section 3106.[15]

Plaintiff finally makes a claim that public policy protects places where the dead are buried. (See *Eden Memorial Park Assn.* v. *Superior Court* (1961) 189 Cal.App.2d 421, 424-425 [11 Cal.Rptr. 189].) There is indeed such a policy, but it is codified in the statutes governing the disposition of human remains. But they also establish the limits of

---

[13]Despite his espousal of a strong public policy of respect for the dead, plaintiff does not urge that any land on which six or more persons were buried, however long ago, even in prehistory, can never be used for noncemetery purposes.

[14]Health and Safety Code section 8100 is dependent upon current section 8126, which substantially reenacts section 3105. (See *ante*, fn. 9.)

[15]This conclusion is supported by the brief "moratorium [which the Legislature placed] on the disturbance of native California Indian burial sites abandoned less than 200 years ...." (Stats. 1971, ch. 827, § 1 p. 1630; repealed by Stats. 1976, ch. 1332, § 1, p. 6028.) Plaintiff's interpretation of the 1854 act and 1872 Political Code statutes would have afforded such protection, making unnecessary the moratorium legislation.

the policy chosen by the Legislature. The legislative judgment is binding on us in the absence of a supervening constitutional right and none has been claimed. (See *Cemetery Board* v. *Telophase Society of America* (1978) 87 Cal.App.3d 847, 858 [151 Cal.Rptr. 248].)

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Regan, J., concurred.