## MARYLAND CASUALTY CO. OF BALTIMORE, MD., v. BANK OF ENGLAND.[*]

(Circuit Court of Appeals, Eighth Circuit. December 5, 1924.)

No. 6617.

1. **Insurance** ⚖⚬332(2)—**Breach of condition for monthly comparison of employés' accounts held to prevent bank's recovery.**

Failure of bank to have monthly comparison of cash and securities with books, pursuant to written statement to that effect in application for employé's fidelity bond, *held* to preclude recovery on bond, notwithstanding another statement in application negatived any examination of employés' accounts other than by state or national bank examiners.

2. **Insurance** ⚖⚬146(3)—**Fidelity bond cannot be changed by rules of construction.**

The rule that any ambiguity should be resolved against the drawer of a fidelity bond does not mean that the contract can be changed or refined away by a mere rule of construction.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action at law by the Bank of England against the Maryland Casualty Company of Baltimore, Md. Judgment for plaintiff (293 F. 783), and defendant brings error. Reversed and remanded.

Ashley Cockrill and H. M. Armistead, both of Little Rock, Ark., for plaintiff in error.

James B. Gray and G. E. Morris, both of England, Ark., for defendant in error.

Before STONE and KENYON, Circuit Judges, and KENNEDY, District Judge.

STONE, Circuit Judge. This is an action by the Bank of England, Ark., against the Maryland Casualty Company of Baltimore, Md., upon a bond guaranteeing the fidelity of Mamie McKenzie as bookkeeper in the bank. Jury was waived. From a judgment in favor of the bank, the casualty company sues this writ of error.

The defense relied upon in the trial court was the breach by the bank of certain conditions of the bond which, it was claimed, released the casualty company from all liability upon the bond. The contentions here follow the same lines and take form around assignments of errors which relate to the refusal of certain peremptory and declaratory declarations of law and to certain portions of the law as declared by the court. These have to do with two provisions of the bond and the related warranties upon which the bond was issued. These two provisions of the bond are (italics ours) as follows:

"This bond is executed by the company upon the following express conditions, which

shall be deemed conditions precedent to any right of the employer to recover hereunder;

"First: That the acceptance and retention of this bond by the employer shall be considered as conclusive evidence that the employer consents and agrees to all the terms, conditions and provisions contained herein, and *all written statements made, or which at any time may be made by the employer, in connection with this bond, or any renewal thereof, are warranted by the employer to be true, and if any such statements shall be found to be untrue in any particular,* or if the employer shall willfully suppress or misstate any fact in making any claim for, or in proving any loss under this bond, *then this bond shall become void and the company shall not be liable to the employer for any claim whatsoever made under or by virtue of this bond.*

"Second: That *the duties of the employee,* the system of accounting, the safeguards established and the method of compensation *shall all remain in accordance with the written statements, hereinbefore referred to; unless change therein shall be consented to, in writing, by the company.*"

The related warranties were contained in the "written statement" made prior to and in connection with the application for the bond. Those pertinent here are as follows:

"What will be the title of applicant's position? (a) Bookkeeper.

"Explain fully his duties in connection therewith. (b) Keep the books of bank, and assist teller.

"Will applicant authorize the loans and discount of the bank? (c) No.

"What salary will the applicant receive? $50.00.

"Will the applicant have access to the treasury of the bank? (a) Yes.

"If so under what restrictions? (b) None.

"In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts and vouchers, and by whom? (a) Monthly.

"Will any examination of the applicant's accounts be made outside of the audit of the state or national bank examiners? (b) No."

This "statement" closed, above the signature of the bank, as follows:

"It is agreed that the above answers shall be warranties and form a part of, and be conditions precedent to the issuance, continuance or any renewal of or substitution for, the bond that may be issued by the Maryland Casualty Company, in favor of the undersigned, upon the person above named."

The evidence showed and the court found as follows:

"The evidence establishes, and the court so finds, that the only examinations made of the applicant's accounts, vouchers and books, during the entire time the bond and renewals were in force, were made by the state bank examiner, those for the years 1917, 1918 and 1919 only once a year, and since then twice annually, and there was no waiver by the surety company, if monthly examinations were required by the terms of the bond."

"The court finds that after the execution of the bond and while it was in force, the applicant was made, in addition to being bookkeeper and assistant teller, assistant cashier, and as such was authorized in addition to her duties as bookkeeper and assistant teller, to sign drafts and cashier's checks, and that this additional duty was not consented to in writing by the defendant."

Because of the above quoted provisions of the bond and the above showing of evidence and findings of fact, the casualty company contends as follows:

I. That the bond was breached by failure of the bank to make the monthly examinations required by its promissory warranty;

II. That the bond was breached by changing the duties of the employee in a way that added to the insurance hazard, without obtaining the written consent of the casualty company.

## I.

There was in the trial court, and can be here, no question that there were no monthly examinations. Nor was there nor could there be any doubt that such omission would release the bond if the bond required such examinations to be made. The view of the trial court was as follows:

"That a failure of an absolute promissory warranty to make monthly examinations of the applicant's accounts will avoid the policy under provisions of a bond or policy, like the one in this case may be conceded, but was there such a warranty?

"Question 11 contains three questions, subdivision 'A' two and subdivision 'B' one. The questions in 'A' read: 'In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts and vouchers, 2—and by whom?' The first part of the questions is answered 'Monthly.' The second is unanswered. Acceptance of the

application and execution of the bond, without an answer to a question is a waiver. Phœnix Ins. Co. v. Raddin, 120 U. S. 183, 7 S. Ct. 500, 30 L. Ed. 644.

"If there were no other answer to that question in paragraph II, failure to make such examinations monthly by some one would unquestionably be fatal to a recovery on the bond.

"But B of question 11, which reads: 'Will any examination of the applicant's accounts be made outside of the audit of the state or national bank examiners?' was answered 'No.' The defendant had therefore been advised that the only examination of the applicant's books, vouchers and accounts would be made by the state bank examiner, and by none other.

"The law of Arkansas in force at the time the bond and the renewals were executed and still in force made it the duty of the state bank examiner 'to make an examination of every bank at least once a year.' Section 705, Crawford & Moses' Digest of Arkansas Statutes 1921.

"The defendant was bound to know that the state bank examiner was not required by the laws of the state, nor could he be required by the bank to make monthly examinations of the bank's books and accounts, nor could it presume that the state bank examiner would make monthly examinations of the bank. Executing its bond with such knowledge was, in the opinion of the court, a waiver of monthly examinations by the state bank examiner, the only person, the bank stated, who was to make the examinations. It did not state that examinations would be made by its officers, or by some independent examiners outside of the bank, as contended by counsel. If counsel's contention is to be sustained monthly examinations by the officers of the bank or independent auditors outside of the bank would be just as fatal to a recovery. A strict construction of these answers, as insisted on, required monthly examinations by the state bank examiner, and by none other, and his failure to make them monthly would be a fatal breach."

[1] With this conclusion and some of the reasoning we cannot agree. It seems clear that two distinct matters were intended to be dealt with in these two questions. The first sought information as to "how often and by whom" the bank would make its own comparison of the cash and securities of the bank with those books in the bank which should show the amount of cash and securities which should be on hand. This was a check upon the cash and securities on hand to be made, ordinarily, by some committee or officer of the bank other than the applicant employee. The second question referred to general and comprehensive audits or examinations of the accounts of the employee, ordinarily made by expert accountants. To hold that the two questions referred to the same matter would usually, as in this instance, lead to the counteraction and nullification of each other.

In this case, the bank failed to answer "by whom" this monthly comparison would be made, which had the effect, as said by the trial court, of a waiver of such answer when the application with this part of the question unanswered was accepted and the bond issued thereon. Phœnix Ins. Co. v. Raddin, 120 U. S. 183, 190, 7 S. Ct. 500, 30 L. Ed. 644. This waiver left the bank free to have such monthly comparison made by any one, except the employee herself. But suppose the bank had answered this question and said the comparison would be made by the cashier. It would then have been clear that the bank was assuring the casualty company that its cashier would monthly make such a comparison and that, when the other question was answered in the negative, the parties understood that they were considering different matters in the two questions. If, as suggested by the trial court, the casualty company should be held to know that the state bank examiner would not make monthly examinations of this bank's affairs, it is certainly as reasonable to presume that the bank itself was well acquainted with that fact. If both parties knew this, then both must have intended and understood something different from an official comparison or examination when the bank declared that a monthly comparison would be made. We think both parties understood that these questions referred to different matters.

[2] It is true that it is a rule of construction that ambiguities should be resolved against the drawer of an instrument and that this rule has been properly applied to insurance contracts. American Surety Co. v. Pauly, 170 U. S. 133, 144, 18 S. Ct. 552, 42 L. Ed. 977. However, this does not mean that the contract can be changed or "refined away" by this mere rule of construction (Guarantee Co. v. Mechanics' Savings Bank & Trust Co., 183 U. S. 402, 419, 22 S. Ct. 124, 46 L. Ed. 253), nor that all other rules of contract construction must stand silent in the presence of this rule. Other rules of construction are that all parts

of a contract must be given a reasonable meaning and vitality and that parties are presumed not to insert idle, foolish, meaningless language.

We think the parties had no difficulty in understanding each other and that, to them, both of the questions and the answers thereto were intended to have the meaning above set forth.

As the bond expressly provided that it should fail if these monthly comparisons were not made and as they were not made, the bank cannot recover. The difficulty in this, as in some other insurance cases, is that the insured takes the view that all that is necessary to recovery on a bond or policy is to pay the premium and suffer a loss. That is rarely the case. The premium is graduated according to the extent of risk as based on experience and reason. The risk of turning a person loose with money without check, word or supervision is one thing, while the risk on the same person under careful, frequent check and supervision is quite another. These promissory obligations of the insured which affect the risk are about the only safeguards the insurer has and cannot be lightly disregarded.

Because of the views expressed above, it is unnecessary and can serve no useful purpose to consider and determine the second matter raised by plaintiff in error concerning the effect of the claimed change of employment and duties of the person covered by the bond.

The judgment is reversed and remanded for new trial.