SUSAN MITCHELL, Commissioner Office of the Commissioner ofInsurance
You have requested my opinion as to whether a certain plan, presented to your office by Transplants For Life, Inc., constitutes "insurance" and is subject to the insurance code.
Based upon documents furnished by your office, particularly copies of recent correspondence from Transplants For Life, Inc. (hereafter the company), the plan would operate as follows. For the asserted purpose of increasing the availability of human organs suitable for transplant, the company will seek to enroll large numbers of members who will pay a once-only lifetime fee of $10 to enroll. The members will be encouraged and given incentive to donate their organs for transplant while living or after death. The company will pay $1,000 to the donor or to any person or organization he designates if any of his organs are used in a transplant operation. (It is not clear whether the company will pay an additional $1,000 for *Page 246 
each additional organ donated.) The company expects that such payments would be made for very few members. The company's stated purpose is that of increasing the number of potential organ donors, and the $1,000 payment is presented strictly as a marketing device. An agreement to make organs available for transplant is not a condition of membership. The company represents that it is selling a program which says to prospective members:
 Join this program by paying a $10.00 lifetime enrollment fee and for that $10.00, Transplants For Life agrees to solicit more potential donors so that you and/or your family will have a better chance to receive a donated organ if you/they should ever need it. And the selection of organs will be greater thereby promising a better transplant match, with increasing chances of success. Further, in order to provide an incentive for you and other members to become potential donors, Transplants For Life will make a $1,000 incentive payment to or for any member, if any of your organs are used in a transplant operation.
See letter from the president of Transplants For Life to Mr. Mandt dated May 2, 1979.
Section 600.03 (25), Stats., states:
"Insurance" includes:
 (a) Risk distributing arrangements providing for compensation of damages or loss through the provision of services or benefits in kind rather than indemnity in money;
 (b) Contracts of guaranty or suretyship entered into by the guarantor or surety as a business and not as merely incidental to a business transaction.
Although this statutory definition does not purport to be all-inclusive, it is not particularly helpful here.
Spencer Kimball, a nationally recognized authority on insurance, has defined insurance as:
 [A]ny formally organized scheme for the distribution of an adventitious economic loss over a large number of persons subject to the risk of such loss, with a view to replacing the uncertain risk of loss by a predictable cost. The loss is distributed by transferring the risk to an insurer, who may be an independent *Page 247 
entrepreneur or may be simply the group of persons insured, operating through some corporate or agency device. The loss may be distributed in advance by charging a premium, or after the event by assessment, or by a combination of the two. For the enterprise to be commercially successful, the incidence of the loss should be reasonably predictable for some class of persons from which the participants will be drawn, and therefore for any sufficiently large number of such participants taken at random.[1]
S. Kimball, Insurance and Public Policy (special ed. 1960), The University of Wisconsin Press, p. 5.
In an earlier opinion to one of your predecessors, I said: "A contract of insurance is in its nature aleatory, voluntary, executory, conditional, and personal, and except as to life and accident, it is one of indemnity. Volume I, Couch on Insurance, 2d 1959, sec. 1:5, p. 30." 57 Op. Att'y Gen. 87, 90 (1968).
Aleatory contracts have been defined as "those where performance on the part of one is conditioned on a fortuitous event." Southern Surety Co. v. MacMillan Co., 58 F.2d 541, 549
(10th Cir. 1932).
In 59 Op. Att'y Gen. 134, 137 (1970), it was stated: "[I]t may be said that an insurance contract, with certain exceptions not relevant here, essentially involves a risk (related to an uncertain event, the happening of which may cause a loss) for which one party undertakes to indemnify the other party's loss for a stated consideration (premium)."
In the last cited opinion, it was concluded that a "claims service contract" was not a contract of insurance because it lacked the "characteristic indemnification" even though an element of risk was *Page 248 
involved. In the instant case, however, it is difficult to find any risk of loss to the member because, as I understand it, the member is always free to decide whether or not he wishes to donate an organ for a transplant operation. The only thing a member stands to lose is one of his organs, and there is no risk of loss because there can be no loss without the member's consent.
Further, in order for this plan to be insurance there must be an indemnity against a risk of loss. In this case, the argument that the plan is insurance would assert that the indemnity consists either in the payment of $1,000 for an organ or perhaps even in the increased probability of finding a donor for the recipient's unexpected loss of an organ.
I am persuaded that such argument must fail. The payment of $1,000 is for a controlled event, viz., the surrender of an organ. It is not in payment for an unexpected or fortuitous loss of an organ.
Moreover, the increased probability of finding a donor for the unexpected loss of an organ lacks the requisite assurance (indemnification) for purposes of this loss. No one is guaranteed or even promised that his loss will be cured by a donated organ.
I conclude on the basis of facts presented to me that the proposed plan submitted by Transplants For Life, Inc., does not constitute insurance within the meaning of the laws of this state and therefore is not subject to regulation by the Commissioner of Insurance.
BCL:JEA
[1] The Wisconsin Supreme Court has not taken a rigid position on the definition of insurance.
 "Whether a corporation or association is engaged in the insurance business must be determined by the particular objects which it has in view, and not by abstract declarations of general purposes; the business which the organization is actually carrying on, rather than the mere form of the organization, is the test for determining whether it is carrying on an insurance business."
State ex rel. Martin v. Dane County Mut. Ben. Asso.,247 Wis. 220, 232, 19 N.W.2d 303 (1945) (quoting 29 Am. Jur. Insurance
sec. 4).